UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODERICK COMER,                              Case No. 17-13218

            Plaintiff,                       Honorable Nancy G. Edmunds

v.

ROOSEN VARCHETTI & OLIVIER, PLLC,
and CAVALRY SPV I, LLC,

            Defendants.

_____/

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [19]**

Plaintiff Roderick Comer ("Plaintiff") has brought this action against Defendants

Roosen Varchetti & Olivier, PLLC ("Roosen") and Calvary SPV I, LLC ("Calvary"),

alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §

1692, the Michigan Collection Practices Act ("MCPA"), Mich. Comp. Laws § 445.251,

the Michigan Occupational Code ("MOC"), Mich. Comp. Laws § 339.915, and the

Michigan Consumer Protection Act, Mich. Comp. Laws §445.901, as well as other state

law claims.  The alleged violations stem from the recording and maintaining of a

judgment lien against his property based on a judgment obtained against his spouse.

The matter is now before the Court on Defendants' motion for summary judgment on all

claims.  For the reasons discussed below, the Court DENIES IN PART and GRANTS IN

PART Defendants' motion.

**I.      Background**

Plaintiff is the sole owner of real property located at 1935 Smith Street, Ypsilanti,

Michigan 48198 in Washtenaw County.  He resides there along with his spouse.

Roosen, a collection law firm, obtained a default judgment in the amount of $984.35 against Plaintiff's spouse and in favor of Calvary on April 7, 2016. (Dkt. #19-2, Pg ID 110.) Roosen filed a notice of judgment lien with the Washtenaw County Record of Deeds on May 9, 2016. (Dkt. #19-3, Pg ID 112.) The notice includes the last four digits of Plaintiff's spouse's social security number, her name, and her last known address and states that it attaches to "the judgment debtor's current or future interest in real property." (*Id.*) The lien was recorded on May 24, 2016. (*Id.*)

In August of 2016, Plaintiff applied for a home equity loan on his property. (Dkt. #23-3, Pg ID 193.) As part of this process, the title company prepared a report, dated August 31, 2016, which showed the notice of the judgment lien, identifying Calvary as the "PLAINTIFF" and Plaintiff's spouse as the "DEFENDANT." (Dkt. #19-4, Pg ID 115-16.) The report also states that "JUDGMENT RECORD REFLECTS A SEARCH WHICH WAS LIMITED TO PARTY/PARTIES AS TITLED." (*Id.* at Pg ID 116.) Plaintiff's application for the home equity loan was denied and the bank informed Plaintiff that the title company would not insure his home due to the presence of the lien and that title insurance was a requirement for refinancing. (Dkt. #23-3, Pg ID 193-94.) Plaintiff alleges that he contacted the Defendants approximately four or five times to resolve this matter, but they have refused to remove the lien on the property. (Dkt. #1-1, Pg ID 6.)

Plaintiff filed his lawsuit against Defendants in the Washtenaw County Circuit Court on August 29, 2017. Defendants removed the case to this Court. This matter is now before the Court on Defendants' motion for summary judgment. (Dkt. #19.) Plaintiff filed a response to Defendants' motion and Defendants filed a reply. (Dkts. #23, 24, 27.) The Court heard oral arguments on the motion on October 17, 2018.

## II.     Summary Judgment Standard

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when "'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).  When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'"  *Id.* at 327 (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)).  Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

## III.     Analysis

### A.     Whether the Judgment Lien was Valid Under Michigan Law

Defendants argue that they are entitled to summary judgment because the filing of the judgment lien was lawful pursuant to the Michigan Judicial Lien Act ("MJLA").[1] The MJLA was made effective in 2004 and allows a creditor to enforce a judgment held

---

[1] Defendants also argue that two of Plaintiff's claims are time barred, as will be discussed below.

against a debtor by recording a judgment lien on the appropriate property.  *See Thomas*

*v. Dutkavich*, 803 N.W.2d 352, 404 (Mich. Ct. App. 2010).  If a notice of judgment lien is

properly recorded with the register of deeds for the county in which the property is

located, the judgment lien attaches to the "judgment debtor's interest in the real

property."  Mich. Comp. Laws § 600.2803.  The notice of judgment lien must conform to

certain technical requirements and must be served on the judgment debtor.  Mich.

Comp. Laws § 600.2805.  The judgment lien expires five years after the date that it was

recorded, unless it is extinguished as set forth by the statute.  Mich. Comp. Laws §

600.2809.  The lien does not give the creditor the right to foreclose on the property.

Mich. Comp. Laws § 600.2819.  Instead, the statute sets forth that the debtor shall pay

the amount due to the creditor at the time of the sale or refinancing of the property

limited to his or her equity in the property.  *Id.*  Defendants argue that the judgment lien

was proper because it only mentioned Plaintiff's spouse's name and only attached to

her interest in the property.[2]

While a debtor spouse may have an interest in a property, a judgment lien does

not necessarily attach to the property solely on the basis of that interest.  In fact, the

MJLA explicitly states that "[a] judgment lien does not attach to an interest in real

property owned as tenants by the entirety unless the underlying judgment is entered

---

[2] At oral argument, Defense counsel also argued that Defendants had followed
the MJLA and recorded the judgment lien in the county where the judgment was
obtained.  However, that is not correct.  The statute sets forth that the lien is to be
recorded in the county where the property is located.  *See* § 600.2803.  Therefore, the
creditor must first make a determination as to whether the debtor has a property interest
in that particular county.  Only if there is an appropriate property may the creditor record
the lien with the register of deeds for that county.

against *both* the husband and wife." Mich. Comp. Laws § 600.2807 (emphasis added). This is a codification of the common law rule that "property held as a tenancy by the entireties is not liable for the individual debts of either party." *Walters v. Leech*, 761 N.W.2d 143, 147 (Mich. Ct. App. 2008).

Here, Plaintiff does not own the property along with his spouse as a tenancy by the entireties, but instead is the sole owner. Defendants cite to the case of *Thomas*, 803 N.W.2d at 406, to argue that Michigan recognizes that a wife has a dower interest in property held by her husband, even if she is not on the title. "[D]ower is a contingent estate that becomes vested on the death of the husband and is to be protected before and after vesting." *Id.* at 406 (citing *Oades v. Standard Sav. & Loan Assoc.*, 241 N.W. 262, 263 (Mich. 1932)). In *Thomas*, the issue was whether a judgment lien had properly attached to the property of the debtor spouse despite the non-debtor spouse's dower interest. *Id.* at 406. The court answered that question in the affirmative, noting that the recording of the judgment lien "in and of itself" did not deprive the non-debtor spouse of her dower interest. *Id.* at 408. The court also noted that the non-debtor spouse had participated in the closing and execution of the deed to the property to a third-party, "thereby voluntarily extinguishing or relinquishing her dower interest." *Id.*

Here, unlike in *Thomas*, the spouse who owns the property does not have any liability on the underlying judgment. The property belongs to Plaintiff alone and the debtor spouse is the one with the dower interest. To allow the lien to attach to Plaintiff's property in this case would run contrary to the rationale behind the rule regarding tenancies by the entireties, which is to protect the innocent spouse's interest in the property. *See Walters*, 761 N.W.2d at 150 (holding that child-support liens may not be

imposed upon property held as a tenancy by the entireties despite the interest in

children being supported by their noncustodial parents because "there is also an

important interest in protecting an innocent spouse's property").  Moreover, the debtor

spouse's dower interest in this case is even farther removed than if it were a tenancy by

the entireties, to which the judgment lien would not attach unless the judgment was

against both parties.  The Court therefore finds that a judgment lien does not attach to

the property of a spouse who does not have any liability on the underlying judgment

based on the debtor spouse's dower interest alone.[3]  In light of this finding, there is no

need to address Plaintiff's additional argument that Defendants were required to first

pursue collection efforts against the debtor's personal property before recording the

judgment lien.[4]

Defendants also argue that the judgment lien did not implicate Plaintiff's property

rights.  They cite to the case of *Weatherseal Home Improvements, Inc. v. Sable*, No.

314079, 2014 Mich. App. LEXIS 1938 (Mich. Ct. App. Oct. 16, 2014), in support of that

proposition.  In that unpublished case, the issue was whether a creditor was entitled to

---

[3] Defendants argue that the judgment lien attaches to any future interest Plaintiff's spouse may acquire in the property as well.  Defendants do not state what that future interest may be.  If Plaintiff's spouse were to later acquire an interest in the property as a tenant by the entireties, as noted above, the judgment lien would still not attach because Plaintiff does not have any liability on the underlying judgment. *See* § 600.2807.

[4] Plaintiff cites to the case of *George v. Sandor M. Gelman, PC*, 506 N.W.2d 583, 585 (Mich. Ct. App. 1993), to argue that Defendants were required to pursue collection efforts against the debtor's personal property prior to asserting a lien against her interests in real property.  *See id.* ("In Michigan, direct attachment of a debtor's real estate is disfavored.").  As Defendants correctly note, that rule was set forth in the context of a writ of execution.  The MJLA does not allow the creditor to foreclose on property as the creditor may do pursuant to a writ of execution.  *See* § 600.2819.  The rationale for the rule requiring collection efforts be pursued against personal property first is therefore not applicable in this case.

payment under the judgment lien following the sale of the property held by the parties as a joint tenancy. *Id.* at *4-5. The court held that because the debtor spouse had no equity in the property, the judgment lien holder was not entitled to any proceeds from the sale. *Id.* at *6.

The limited holding in *Weatherseal* does not speak to the issue of whether a judgment lien impairs a non-debtor spouse's interests in property. The fact that the creditor was not entitled to payment under the facts of that case does not mean that the property owner's rights were not implicated. In *Thomas*, 803 N.W.2d at 399, the judgment lien was similarly not discharged upon the sale of the property and the purchaser brought a quiet-title action. After holding that the lien properly attached to the property despite the non-debtor spouse's dower interest, the court also held that the lien remained attached to the property and was not discharged by the sale of the property. *Id.* at 408. The court recognized that the lien implicated the purchaser's property rights but reasoned that this was not unfair to him because he had constructive notice of the lien and decided to proceed with the sale "knowing that the judgment lien remained a cloud on the title and could be problematic." *Id.* at 411.

In this case, Plaintiff, who has no liability on the underlying judgment, was unable to obtain refinancing on his home due to the lien. Even though the judgment lien stated that the judgment debtor was Plaintiff's spouse, the Court finds that this did not cure the improper legal burden placed on Plaintiff's home. Having concluded that the lien did not properly attach to Plaintiff's home and does compromise Plaintiff's rights, the Court will now address the remaining arguments made by the parties regarding each of Plaintiff's claims.

**B.     Plaintiff's Fair Debt Collection Practices Claims**

Plaintiff alleges that the judgment lien in this case violated multiple provisions of the FDCPA, including 15 U.S.C. §1692e, which prohibits "false, deceptive, or misleading representation or means in connection with the collection of any debt" and 15 U.S.C. § 1692f, which prohibits "unfair or unconscionable means to collect or attempt to collect any debt."[5]

The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  According to the Sixth Circuit, FDCPA violations should be analyzed under a "least sophisticated consumer" standard.  *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1028 (6th Cir. 1992).  As applied, this standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor."  *Smith v. Computer Credit, Inc.*,167 F.3d 1052, 1054 (6th Cir. 1999) (citation omitted).

In *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014), the Sixth Circuit considered whether the filing and failing to release an invalid lien violated the FDCPA.  The court noted that the FDCPA is "'extraordinarily broad'" and found that

---

[5] Each of these sections of the statute includes a list of conduct that is a violation of that section.  Plaintiff alleges that Defendants' conduct fits several categories.  For purposes of this discussion, there is no need to address each separately.  *See, e.g.*, *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014) (stating that because the plaintiff had plausibly alleged an unfair debt collection practice under the broad meaning of § 1692f, there was no need "to go into the details of whether the practice is also unfair because it is an attempt to collect an amount not authorized by the creditor card agreement or by law under § 1692f(1)").

maintaining an invalid lien "falls comfortably within the kinds of practices Congress has identified as unfair under § 1692f of the FCPA." *Id.* at 533, 535 (citations omitted). The court reasoned that the judgment lien in that case placed an improper legal burden on Plaintiff's home, restricting her rights in her own property. *Id.* at 534. The court stated that "[t]he least sophisticated consumer, indeed most consumers, would regard filing a lien on the debtor's home using a state procedure that does not authorize such action as an 'unfair or unconscionable means to collect or attempt to collect' the debt." *Id.* at 535 (quoting 15 U.S.C. § 1692f). The court also found that filing and maintaining an invalid lien for a month can also be characterized as a threat to take an action that cannot legally be taken within the meaning of § 1692e(5). *Id.* at 535.

The Court finds that the filing of the judgment lien in this case similarly falls within the ambit of the FDCPA. As discussed above, the judgment lien did not properly attach to Plaintiff's property in this case. Therefore, there are genuine issues of material fact as to whether the judgment lien in this case would mislead the least sophisticated consumer and whether the least sophisticated consumer would regard the filing of the lien as an unfair or unconscionable means to attempt to collect a debt. *See Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 613 (6th Cir. 2009) (holding that where a jury could find that the least sophisticated consumer would be misled by a debt collection document, summary judgment for the defendant was improper under § 1692e and § 1692f). Thus, the FDCPA claims in this case survive the motion for summary judgment.

### C.    Plaintiff's Michigan Collection Practices Claims

Plaintiff also alleges violations of the MCPA, which are similar to the alleged violations of the FDCPA. "MCPA claims which 'simply duplicate . . . claims under the

FDCPA' need not be addressed separately." *Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948, 967 (E.D. Mich. 2012) (citation omitted). Thus, summary judgment is improper on Plaintiff's MCPA claims for the same reasons it is improper on his FDCPA claims.

### D. Plaintiff's Michigan Occupational Code Claims

Plaintiff also alleges violations of the MOC. In their motion, Defendants argue that "a person or entity engaged in debt collection activities is either a "a collection agency' under the Occupational Code or a 'regulated person' under the MCPA but not both." *Misleh v. Timothy E. Baxter & Assocs.*, 786 F. Supp. 2d 1330, 1337 (E.D. Mich. 2011) (listing cases that have recognized this).[6] Here, Plaintiff has alleged that Defendants are regulated persons under the MCPA but has not alleged that they are collection agencies under the MOC. Defendants are therefore entitled to summary judgment on Plaintiff's MOC Claim.

---

[6] The *Misleh* court noted:

The Occupational Code's definition of a "collection agency" includes language that exactly mimics the MCPA's definition of a "regulated person," with the result that those who are **excluded** from the definition of a "collection agency" are **included** as "regulated persons" under the MCPA. *Compare* Mich. Comp. Laws § 339.901(b) (providing that a "[c]ollection agency does not include a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency" and then specifying a non-exhaustive list of entities that are not collection agencies, including "[a]n attorney handling claims and collections on behalf of clients and in the attorney's own name"), *with* Mich. Comp. Laws § 445.251(g) (defining "regulated person" to **include** the persons excluded under the Occupational Code — namely, those "whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency").

*Misleh*, 786 F. Supp. 2d at 1337.

### E.    Plaintiff's Michigan Consumer Protection Act Claim

Plaintiff has also brought a claim under the Michigan Consumer Protection Act,
which prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the
conduct of trade or commerce."  *See* Mich. Comp. Laws § 445.903(1).  Defendants
argue that the conduct at issue is exempt from the statute, which sets forth an
exemption for any "transaction or conduct specifically authorized under laws
administered by a regulatory board or officer acting under statutory authority of this
state or the United States."  Mich. Comp. Laws § 445.904(1)(a).  In *Liss v. Lewiston-
Richards, Inc.*, 732 N.W.2d 514, 521 (Mich. 2007), the Michigan Supreme Court held
that residential home builders who had formed an agreement to build a home fell within
this exception to the statute.  The court reasoned that "[r]esidential home builders are
licensed under the MOC and are regulated by the Residential Builders' and
Maintenance and Alteration Contractors' Board, which oversees licensing and handles
complaints filed against residential builders.  Moreover, there is a set of administrative
rules promulgated to regulate the licensing procedure."  *Id.* at 520.  The court noted that
the home builders were engaged in activities that were "permitted by the MOC to be
performed only by licensed residential home builders."  *Id.* at 521.

Here, while the filing of a judgment lien is generally authorized under the
Michigan Judicial Lien Act, there is no similar licensing or administrative process that
regulates lien filing.  The Court therefore finds that the exemption does not apply in this
case and Plaintiff's claim under the Michigan Consumer Protection Act survives
Defendants' motion.  In light of this finding, there is no need to address Plaintiff's

alternate argument that Defendants had waived any exemption argument under the Michigan Consumer Protection Act by failing to plead it as an affirmative defense.

### F.    Plaintiff's Slander of Title and Negligence Claims

Plaintiff has also brought a claim for slander of tile and seeks damages pursuant to Mich. Comp. Laws § 565.108.  In order to prove slander of title in Michigan, "plaintiff must establish that defendant 'maliciously published false matter disparaging [plaintiff's] title, causing [it] special damages.'"  *GKC Mich. Theaters, Inc. v. Grand Mall*, 564 N.W.2d 117, 119-20 (Mich. Ct. App. 1997) (quoting *Sullivan v. Thomas Org., P.C.*, 276 N.W.2d 522, 525 (Mich. Ct. App. 1979)).  Michigan courts have held that "damages in removing the cloud from a plaintiff's title are recoverable in a slander of title action."  *Id.* at 120.

As the Court has concluded, the judgment lien in this case did not properly attach to Plaintiff's property.  In *Cole v. Cardoza*, 441 F.2d 1337, 1343 (6th Cir. 1971), the Sixth Circuit considered whether an invalid federal tax lien created a cloud on the title of the property.  In that case, the lien was invalid because the property was a tenancy by the entireties and only one spouse was liable for the underlying tax judgment.  The court noted that under Michigan law, "a cloud upon a title can be merely an apparent defect and that if it 'has a tendency, even in the slightest degree, to cast doubt upon the owner's title, and to stand in the way of a full and free exercise of his ownership,' it should be removed."  *Id.* at 1343 (citing *Whitney v. Port Huron*, 50 N.W. 316, 317-18 (Mich. 1891)).  The court held that because "the existence of a federal tax lien on the public land records pertaining to appellants' property would make a prospective buyer or mortgagee hesitant to commit himself until the tax lien was removed," it constituted a

cloud on the title, which the appellants were entitled to have declared a nullity. *Id.* at 1343-44.

While in *Cole* a title examination did not disclose whether the tax lien was levied against one spouse or against both, *see id.*, and here the lien does state that Plaintiff's spouse is liable for the underlying judgment, the lien in this case similarly creates a cloud on the title of Plaintiff's home, *see, e.g.*, *Fischre v. United States*, 852 F. Supp. 628, 629-30 (W.D. Mich. 1994) (declaring an invalid tax lien a nullity despite stating that the cloud on the title of the property was "diminished" because the lien clearly identified only one spouse as the judgment debtor). Whether Defendants placed the lien on the property maliciously, as is required for a slander of title claim, is a question of fact.[7] Summary judgment is therefore improper on Plaintiff's slander of title claim.

Similarly, Plaintiff bases his negligence claim on the invalid lien recorded and maintained against his property. This claim also raises questions of fact and thus summary judgment is improper.

### G.    Plaintiff's Encumbering Property to Harass Claim

Plaintiff has also brought an encumbering property to harass claim under Mich. Comp. Laws § 565.25(3), which makes a party liable for penalties for the encumbrance of property through the recording of an instrument "without lawful cause with the intent to harass or intimidate any person." Defendants argue that the lien here is "an instrument of encumbrance authorized by state statute or federal statute" and they are therefore exempt from this statute. *See* Mich. Comp. Laws § 565.25(2)(b). In light of

---

[7] To establish malice, Plaintiff would need to prove that Defendants knowingly filed the lien with the intent to cause Plaintiff injury. *See GKC Mich. Theaters*, 564 N.W.2d at 121 n.3.

the Court's finding regarding the invalidity of the lien, the exemption to the statute does not apply in this case.  Because there are material issues of fact regarding whether Defendants had the intent to harass or intimidate, Defendants are not entitled to summary judgment on this claim.

### E.      Whether Plaintiff's FDCPA and Defamation Claims are Time Barred

Defendants argue that Plaintiff's FDCPA and defamation claims are time barred because the relevant statute of limitations for both claims is one year.  *See* 15 U.S.C. § 1692(k)(d); Mich. Comp. Laws § 600.5805(9).  Defendants note that the lien was filed on May 24, 2016, and Plaintiff filed his lawsuit more than one year later.  In his complaint, however, Plaintiff states that he "learned of the lien in approximately August of 2016."

There are two types of limitations periods: either a statute of limitations starts when the party knew or should have known of the injury, known as the discovery rule, or a statute of limitations runs from the date of the injury, known as the occurrence rule.  *See Rotkiske v. Klemm*, 890 F.3d 422, 423 (3d Cir. 2018) (en banc).  While the FDCPA does not explicitly incorporate either model, it states that the limitations period starts "from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  Thus, it appears to implicitly call for an occurrence rule.  In *Rotkiske*, 890 F.3d at 423, the Third Circuit held that the discovery rule did not apply to FDCPA cases in part due to the language of the statute which "implicitly excludes a discovery rule."  The court further noted that often FDCPA claims are based on repetitive contacts by phone or mail and that these violations will be apparent to consumers "the moment they occur."  *Id.* at 426.

The Sixth Circuit has not decided the issue of whether the discovery rule applies in FDCPA cases, *see Ruth v. Unifund CCR Partners*, 604 F.3d 908, 914 (6th Cir. 2010) (leaving the question of "whether the FDCPA incorporates a discovery rule" "for another day"), but both the Fourth and Ninth Circuits have applied the discovery rule in FDCPA cases, although they did not address the text of the statute, *see Lembach v. Bierman*, 528 Fed. App'x 297, 302 (4th Cir. 2013) (reasoning that plaintiffs "had no way of discovering the alleged violation until they actually saw the fraudulent signatures" and that the defendant "should not be allowed to profit from the statute of limitations when its wrongful acts have been concealed"); *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 939 (9th Cir. 2009) (holding that "our usual discovery rule jurisprudence can apply to the statute of limitations for an FDCPA action"). And even the Third Circuit recognized that there are some instances that may warrant the tolling of the statute of limitations under the FDCPA. *See Rotkiske*, 890 F.3d at 428 (noting that to the extent certain FDCPA claims deal with "false, deceptive, or misleading representations," federal district courts may "avoid patent unfairness in such cases" by applying equitable tolling).

Here, the alleged FDCPA violations are based on the filing and maintaining of an invalid lien. In contrast to the type of violations discussed in *Rotkiske* that may be apparent the moment they occur, an invalid lien may not come to the attention of a property owner until he or she attempts to sell or refinance the property. Applying the occurrence rule in the context of an invalid lien would therefore put the onus on property owners to regularly search for liens on their property. Thus, there is a compelling reason to avoid unfairness under the circumstances by applying the discovery rule. In

addition to the uncertainty regarding the application of the discovery rule, there is a question of fact as to when Plaintiff was put on notice of the invalid lien. The title report that indicated the presence of the lien was dated August 31, 2016, and Plaintiff's lawsuit was filed within one year of that date—on August 29, 2017. If Plaintiff received notice of the lien on the date of the title report, his lawsuit was timely filed under the discovery rule. The Court therefore finds that that the issue of whether Plaintiff's FDCPA claims are time-barred survives this motion for summary judgment.[8]

Plaintiff concedes that his defamation claim was filed after the statute of limitations had run. Defendants are therefore entitled to summary judgment on that claim.

### H.    Whether the Quiet Title and Exemplary Damages Counts Should be Dismissed

Defendants argue that the claims for quiet title and exemplary damages should be dismissed because they are remedies and not causes of action. A suit to quiet title is "functionally a form of declaratory judgment action." *Thomas v. Urban P'ship Bank*, No. 12 C 6257, 2013 U.S. Dist. LEXIS 59818, at *19 (N.D. Ill. Apr. 26, 2013) (citation omitted). Moreover, Michigan law provides a statutory basis for a quiet title action. *See* Mich. Comp. Laws § 600.2932. In light of the Court's finding regarding the invalidity of

---

[8] Plaintiff does not address the question of whether the discovery rule is applicable in this case. Instead, Plaintiff argues that the date of the filing of the lien is not the only relevant date for purposes of his FDCPA claims and that continued collection efforts can restart the limitations period. In light of the Court's finding, there is no need to address this issue. To the extent, however, that this can be construed as an argument that the continuing violation theory applies in FDCPA cases, the Court notes that the Sixth Circuit does not appear to agree with this reasoning. *See Slorp v. Lerner, Sampson & Rothfuss*, 587 Fed. App'x 249, 258 (6th Cir. 2014) (unpublished) (holding that on-going debt-collection litigation is not a continuing violation of the FDCPA and that the limitations period starts when a debt-collection suit is filed).

the lien, Plaintiff may seek a declaration regarding the lien.  Similarly, whether Plaintiff is entitled to exemplary damages depends on certain questions of fact that are not resolved by this motion.

## IV.    Conclusion

For the above-stated reasons, Defendants' motion for summary judgment (Dkt. # 19) is DENIED IN PART and GRANTED IN PART.  More specifically, the claims under the Federal Debt Collection Practices Act, the Michigan Collection Practices Act, and the Michigan Consumer Protection Act as well as for negligence, quiet title, slander of title, encumbering property to harass, and exemplary damages survive this motion (Counts I, II, IV, VI, VII, VIII, IX, X).  The defamation claim is time barred and the motion for summary judgment is granted as to that claim (Count V).  The motion is also granted as to Plaintiff's claim under the Michigan Occupational Code (Count III).

SO ORDERED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: November 1, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 1, 2018, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager